UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| COXCOM, INC. d/b/a COX COMMUNICATIONS: NEW ENGLAND,<br><br>Plaintiff,<br><br>vs.<br><br>FULL CHANNEL TV, INC., MICHAEL MCGONAGLE also known as MICHAEL DAVIS, individually and in his capacity as manager and DAVID RASMUSSEN, individually and in his capacity as chief engineer,<br><br>Defendants. | C.A. No.<br>CA 06 405 ML |

**COMPLAINT**

The plaintiff CoxCom, Inc. d/b/a Cox Communications New England ("plaintiff" or "Cox"), by its attorneys, as and for its Complaint herein against the defendants, alleges the following:

**THE NATURE OF THE ACTION**

1. This action seeks permanent injunctive relief and actual, statutory and punitive damages against Full Channel TV, Inc. ("Full Channel"), Michael McGonagle a/k/a Michael Davis and David Rasmussen (hereinafter collectively "defendants") for their illegal interception and re-transmission of Cox's cable television signals. This conduct has been confirmed both visually and electronically by Cox and by representatives of the Rhode Island law enforcement community. Such unauthorized reception of communications services offered over a cable system violates the Communications Act, 47 U.S.C. § 553 (a)(1) and supplemental state law claims for theft

of communications services, conversion, trespass to chattels and intentional interference with prospective contractual relations.

**Jurisdiction and Venue**

2. This action arises under 47 U.S.C. § 553.

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims. Venue is properly established in the District of Rhode Island pursuant to 28 U.S.C. § 1391(b), as the defendants reside in the District, and the events giving rise to the claim occurred in the District.

**Parties**

4. Cox is a Delaware corporation, authorized to do business in the State of Rhode Island, and it maintains a business address at 9 J.P. Murphy Highway, West Warwick, Rhode Island.

5. At all times hereinafter mentioned, defendant Full Channel TV, Inc. is a Rhode Island corporation, authorized to do business in the State of Rhode Island, and it maintains a business address at 57 Everett Street, Warren, Rhode Island 02885.

6. At all times hereinafter mentioned, Michael McGonagle a/k/a Michael Davis ("Davis") is a resident of the State of Rhode Island, with a residential address at 100 Puritan Drive, Warwick, Rhode Island and is the manager of Full Channel.

7. At all times hereinafter mentioned, defendant David Rasmussen is a resident of the State of Rhode Island, with a residential address at 10 Baltimore Avenue, Warren, Rhode Island and is the chief engineer for Full Channel.

## Factual Background

8. Cox provides telecommunications services, including cable television services, to subscribers in, inter alia, Rhode Island, pursuant to Certificates of Authority to Operate issued to Cox by the Rhode Island Division of Public Utilities and Carriers.

9. In 2002 and 2003, Cox began offering telecommunications services in Bristol, Warren and Barrington, Rhode Island. Prior to those dates, Full Channel was the only cable television provider in those three towns.

10. The towns of Bristol, Warren and Barrington, Rhode Island have a relatively large number of Portuguese residents.

11. In order to provide cable television services to its subscribers, Cox generally pays fees to programmers. Cox then receives cable television programming from the programmers, primarily by way of interstate radio communications. Cox then transmits said programming from its headend facilities over its system using fiber optic cable lines or coaxial cable lines.

12. Cox's cable lines contain all of its programming services. While many of the cable television signals in its cable lines are scrambled (generally, premium and pay per view programming), Cox also cablecasts some of its signals in an unscrambled analog mode. These services include those offered in Cox's expanded basic package, such as the Discovery Channel, The History Channel and Fox News. If an individual or a company were to tap into Cox's cable line that individual or entity would receive access to all of these unscrambled analog services.

13. One of the services that Cox provides to some of its customers is a

channel known as Portuguese TV 20, which is a television station devoted to Portuguese programming. The signal for this station is transmitted in an unscrambled mode on Cox's cable line.

14. Cox entered into an agreement with Portuguese TV 20 to provide the channel to its customers. Cox pays approximately $3,200.00 per month for the broadcast feed of the channel to Cox's network.

15. In addition to paying for the monthly broadcast feed, in order to facilitate the reception of Portuguese TV 20, Cox constructed reception facilities for the channel at a cost of approximately $45,000.00.

16. Upon information and belief, during the relevant period, Full Channel was not authorized to transmit Portuguese TV 20 on its system.

17. Instead of entering into an agreement with Portuguese TV 20 to provide the channel to its customers, as detailed below, the defendants stole the channel from Cox's cable system using at least two distinct modes of theft.

18. This first way the defendants obtained unauthorized access to Cox's signals was by establishing a Cox telephone, high speed internet and cable television account in a home owned by a Full Channel employee in Bristol, Rhode Island. That employee's home was also serviced by Full Channel. Defendants installed and used specifically designed electronic equipment and devices to amplify and modulate the signal received over Cox's cable line to transmit Cox's Portuguese TV 20 signal to Full Channel's headend. From Full Channel's headend the defendants re-transmitted plaintiff's Portuguese TV 20 signal to Full Channel customers at no cost to Full Channel.

19. Second, defendants subsequently made an illegal attachment to

Cox's cable line by connecting a tap and drop assembly to Cox's cable line ("the tapping device") in the vicinity of the Full Channel headend located at 47 Serpentine Road, Warren, Rhode Island. Defendants ran a cable line from the tap assembly to Full Channel's headend. Defendants used the unauthorized connection to Cox's system to obtain Cox's transmission of Portuguese TV 20 and re-transmit it to Full Channel customers at no cost to Full Channel.

20. By willfully intercepting Cox's signals, the defendants obtained a commercial advantage and private financial gain because unlike Cox, the defendants were able to obtain all of Cox's analog programming and to redistribute Portuguese TV 20 to Full Channel's customers without incurring any transmission fees or construction expenses.

21. Upon information and belief, the Rhode Island State Police's Computer Crimes and Detective Units along with the U.S. Secret Service identified the tapping device while executing a court-issued search warrant at Full Channel's headend. Police subsequently identified the specific devices and equipment in the Bristol home as a result of a consent search of that home.

22. In May 2005, the Rhode Island State Attorney General's Office charged defendants Mike McGonagle and David Rasmussen with seven counts of theft of telecommunication services. Currently, those charges are pending.

23. Full Channel illegally intercepted all of Cox's analog cable television signals and cablecasted Cox's Portuguese TV 20 channel feed to Full Channel's subscribers throughout the towns of Bristol, Warren and Barrington, Rhode Island.

24. Full Channel was not authorized by Cox to access or use its signal or service and Cox did not authorize or permit Full Channel to access, use, redistribute, or otherwise interfere with Cox's network of cable wires.[1]

25. Cox did not consent to or authorize Full Channel to intercept its service.

26. Defendants did without the consent of Cox, a supplier of a telecommunications service, tamper with and/or make unauthorized connections to Cox's equipment.

27. The defendants were engaged in a for-profit business and/or obtained economic gain from making unauthorized connections to Cox's equipment without its consent.

28. Defendants made unauthorized connections to Cox's equipment for the purpose of supplying that service to their customers.

29. The signals Cox transmits over its system are private communications not intended for public use. Cox limits access to its signal only to authorized subscribers with whom it has a contractual relationship.

**COUNT I**
**Assistance in Unauthorized Reception of a Communications**
**Service in Violation of 47 U.S.C. § 553 (a)(1)**

---

1 There is an authorized physical connection between Cox and Full Channel's cable television facilities. This connection is referred to as the Statewide Interconnect. The Interconnect is a connection between the companies' systems that exists exclusively to facilitate the transmission of the following government-mandated channels; State Interconnect A, which is Cox Channel 13 (public access programming); State Interconnect B, which is Cox Channel 14 (religious programming); and State Interconnect C, which is Cox Channel 15 (government access programming). Portuguese TV 20 has never been available through the Interconnect.

30. Cox repeats and re-alleges the allegations contained in paragraphs 1 through 29 of this Complaint as if set forth fully herein.

31. Cox's cable television services are communications services offered over a cable system within the meaning of 47 U.S.C. § 553 (a)(1), and protected from unauthorized receipt thereunder.

32. The defendants have engaged in the assistance in the unauthorized reception of Cox's cable television signals without payment making payment therefor.

33. The defendants used and re-transmitted Cox's signal and service without authorization from Cox and have assisted with the interception and reception of Cox's signal and service without authorization from Cox by retransmitting, redistributing, and reselling the misappropriated signal to its customers.

34. By using the defendants' service, a person or business may use and enjoy Cox's cable television services without paying any charge or remuneration to Cox for the use and enjoyment of such services.

35. Cox did not authorize or consent to Full Channel's access, use, or redistribution of Cox's service or signal or authorize Full Channel to tamper with or install any equipment on Cox's private cable lines. Cox did not authorize or consent to the redistribution or sharing of access of its service or signal by Full Channel. Cox did not authorize or consent to the rendering of assistance by Full Channel in the interception or reception of Cox's signal or service or in the tampering with or installation of any equipment on Cox's private cable lines.

36. Defendants' conduct is willful and egregious and has been for purposes of commercial advantage and private financial gain.

37. The plaintiff is a "person aggrieved" by the defendants' violations of the Communications Act, because it possesses proprietary rights to its signal and service. Cox is authorized to institute this action against the defendants under 47 U.S.C. § 553 (c)(1) for violations of section 553 (a)(1) of the Communications Act.

38. The defendants' violations have injured plaintiff's ability to maximize its revenues by depriving it of full remuneration for its services and by injuring its goodwill and reputation.

39. The defendants knew or should have known that their actions were prohibited by law. Such violations of the Communications Act have caused Cox harm.

40. Defendants' redistribution of Cox's signals violates § 553 (a)(1) of the Communications Act, Title 47 of the United States Code.

41. This conduct has actually and proximately caused harm to Cox.

**COUNT II**
**Theft of Telecommunications Service in Violation of Section 11-35.1-2 of the General Laws of Rhode Island**

42. Cox repeats and re-alleges the allegations contained in paragraphs 1 through 41 of this Complaint as if set forth fully herein.

43. Section 11-35.1-3 of the General Laws of Rhode Island provides that a person aggrieved by acts constituting a violation of § 11-35.1-2 may bring a civil action for relief including a temporary or permanent injunction and damages. In addition to any relief, the court may, in its discretion, award costs and reasonable attorney's fees.

44. The defendants' theft of Cox's signals and tampering with its cable television system constitutes theft of telecommunications service in violation of the

General Laws of Rhode Island § 11-35.1-2.

45. The defendants' conduct actually and proximately caused harm to Cox.

**COUNT III**
**Conversion**

46. Cox repeats and re-alleges the allegations contained in paragraphs 1 through 45 of this Complaint as if set forth fully herein.

47. Defendants wrongfully acquired and converted for their use Cox's cable television signals in order to access and retransmit those services for their financial gain.

48. By making unauthorized attachments of equipment to Cox's cable system and obtaining unauthorized access to Cox's signals and system, the defendants converted Cox's property.

49. The defendants were not authorized to acquire Cox's signals or to attach equipment to Cox's system.

50. The defendants exercised dominion over Cox's signal by intercepting it and retransmitting it to their customers.

51. The defendants' interception of Cox's signal constitutes the exercise of dominion over it which is inconsistent with Cox's right thereto.

52. By defendants' interception of Cox's signal they appropriated it for their own use without permission or legal right.

53. The defendants' conduct actually and proximately caused harm to Cox.

**COUNT IV**
**TRESPASS TO CHATTELS**

54. Cox repeats and re-alleges the allegations contained in paragraphs 1 through 53 of this Complaint as if set forth fully herein.

55. The defendants wrongfully and improperly entered onto plaintiff's property, to wit, Cox's cable television system, for the purpose of making unauthorized attachments and modifications thereto.

56. Defendants wrongfully acquired and made an un-permitted use of plaintiffs' cable television signals and system by using devices and equipment to obtain access to those signals for their own financial gain.

57. Plaintiff has suffered damages as a result of defendants' conversion of the cable television signals and equipment owned by plaintiff.

**COUNT V**
**Intentional Interference with Prospective Contractual Relations**

58. Cox repeats and re-alleges the allegations contained in paragraphs 1 through 57 of this Complaint as if set forth fully herein.

59. Since the time that Cox began offering telecommunications services in the towns of Bristol, Barrington and Warren, Rhode Island, it has enjoyed a business relationship with its current customers and those customers it could reasonably expect to gain upon Cox's entry into these areas.

60. Full Channel was aware of Cox's expectant relationship with potential customers in the area and reasonably expected that Full Channel's customers may chose to switch from Full Channel to Cox, for among other reasons, to have access to Portuguese TV 20.

61. Defendants in order to prevent the loss of their customers to Cox intentionally interfered with Cox's relationship with its potential customers by intercepting Cox's signals and redistributing Cox's Portuguese TV 20 signal to Full Channel's customers at no cost to Full Channel.

62. Cox was harmed by the defendants' conduct, in that, in the absence of the defendants' intentional interception of its signals, the number of customers that Cox could have gained in the towns of Bristol, Barrington and Warren, Rhode Island would have been greater.

63. As a proximate cause of the defendants' intentional interference with Cox's prospective contractual relations, Cox has sustained monetary damages in the form of lost revenues from customers that would have become customers of Cox, but for the defendants' unlawful conduct.

**WHEREFORE**, the plaintiff requests that this Court grant the following relief:

(1) Declare that the defendants' unauthorized interception and redistribution of Cox's signal as described above violates 47 U.S.C. § 553 (a)(1), and that such violations were committed willfully and for purposes of defendants' direct or indirect commercial advantage and/or private financial gain;

(2) In accordance with 47 U.S.C. § 553 (c)(2)(a), enjoin the defendants, their agents, servants, employees, affiliated business entities, assigns and those controlled directly or indirectly by any of them or in active concert or participation with them from intercepting, receiving without authorization, redistributing, retransmitting, sharing, reselling, or otherwise interfering or tampering with, or assisting

in or making possible any of the foregoing, with respect to Cox's signals and services;

(3) In accordance with 47 U.S.C. § 553 (c)(2)(B), award the plaintiff, either:

(a) the actual damages which the plaintiff has suffered, together with any additional profits earned by defendants as a result of defendants' unauthorized interception and redistribution of Cox's signal; or alternatively at plaintiff's election,

(b) statutory damages in the total amount of up to $10,000 for all violations of 47 U.S.C. § 553(a)(1) committed by the defendants; and

(c) enhanced damages in the total amount of up to $50,000, as defendants' violations of 47 U.S.C. § 553 (a)(1) were committed willfully and for the purposes of their private financial gain;

(4) In accordance with 47 U.S.C. section 553(c)(3)(A)(i), order an accounting of all profits and expenses realized by defendants in violation of the foregoing statutes, together with defendants' production of all records reflecting defendants interception and redistribution of plaintiffs' signals;

(5) In accordance with 47 U.S.C. § 553(c)(2)(C), direct defendants to pay plaintiff its full costs, including reasonable attorneys' fees and investigative expenses; and

(6) In accordance with Rhode Island General Laws § 11-35.1-3, award the plaintiff:

(a) monetary damages as the Court in its discretion shall deem just and appropriate for each defendants' theft of Cox's telecommunications service;

(b) punitive damages as the Court in its discretion shall deem just and appropriate for each defendants' theft of Cox's telecommunications service;

(c) direct defendants to pay plaintiff its full costs, including reasonable attorneys' fees and investigative expenses;

(d) enjoin the defendants, their agents, servants, employees, affiliated business entities, assigns and those controlled directly or indirectly by any of them or in active concert or participation with them from intercepting, receiving without authorization, redistributing, retransmitting, sharing, reselling, or otherwise interfering or tampering with, or assisting in or making possible any of the foregoing, with respect to Cox's signals and services; and

(7) In accordance with the remedies available for the conversion, trespass to chattels and intentional interference with prospective contractual relations, award the plaintiff;

(a) compensatory damages proximately resulting from each defendants' conversion, trespass to chattels and intentional interference with prospective contractual relations;

(b) punitive damages in an amount to be determined by the trial court for defendants' common law torts of conversion, trespass to chattels and intentional interference with prospective contractual relations;

(8) Grant such other and further relief as is just.

Dated: Jericho, New York
September 6th, 2006

Respectfully submitted,

**LEFKOWITZ, HOGAN & CASSELL, LLP**
Attorneys for plaintiff Cox

By: ______________________
SHAUN K. HOGAN
350 Jericho Turnpike, Suite 100
Jericho, New York 11753
Telephone: (516) 942-4700

Dated: Newport, Rhode Island
September 11, 2006

**MILLER SCOTT & HOLBROOK**
Attorneys for plaintiff Cox

By: ______________________
Francis S. Holbrook (3412)
122 Touro Street
Newport, Rhode Island 02840
(401) 847-7500